## Case No. 1,567.

### BLOUNT et ux. v. DARRACH.

[4 Wash. C. C. 657.][1]

Circuit Court, E. D. Pennsylvania. April Term, 1827.

GUARDIAN AND WARD—ACCOUNTING—DECREE OF ORPHAN'S COURT—CONCLUSIVENESS.

1. The decree of the orphan's court in Pennsylvania of a deceased guardian's account, the subsequent guardian of the infant being a party to the controversy, is conclusive, and a complete bar to a bill in equity in any other court.

[Cited in Rhoades v. Selin, Case No. 11,740.]

2. The doctrine of the conclusiveness and effect of judgments and decrees in courts of peculiar jurisdiction, and others, examined and stated.

In equity. The bill states that the female plaintiff [wife of Blount] is the daughter of Daniel P. Knight, formerly of Philadelphia county, who, on the 22d of April, 1808, conveyed to James Darrach, Thomas Bioren, and John Bioren, a certain real estate in trust for himself for life, and after his death, to the use of his said daughter in fee tail; and in default of issue, to the use of the children of Michael Knight, and his sister Elizabeth, as tenants in common in tail; and in default of such issue, then to the use of said Daniel P. Knight and his heirs. That the said

[1] [Originally published from the MS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

Daniel P. Knight died in the year 1809, leaving his said daughter a, minor, to whom the aforesaid James Darrach was appointed guardian, and who continued to act as such until his death. After his death his executors filed an account of the guardianship of their testator in the orphan's court of the city and county of Philadelphia, and auditors were appointed to audit and settle the same; who reported a balance due to the said Elizabeth Knight by the estate of her late guardian, of $1897, to the 1st of February 1816. Of this balance the executors paid to William Bradford, Jun., who had been appointed the guardian to the said Elizabeth after the death of James Darrach, the sum $1798 49 cents, on the 9th of November 1819. That at the time of the aforesaid settlement of the said guardianship account, the said Elizabeth was an infant, and no attention to the said settlement was paid by her guardian, William Bradford, Jun. The bill then charges that the account so settled was replete with errors and omissions, particularly in the following instances: 1. That no interest is credited the ward on the sums received by her said guardian from the commencement of the account to the 1st of February 1815. 2. That no rents are credited for a house, No. 361, North Front street, in the Northern Liberties, except a small amount, much less than was received by her guardian, or if not received, they were lost by the negligence of her guardian. 3. That there are various deficiencies in the account as to rents on a wharf and lot in the Northern Liberties, and that the account throughout is imperfect. The bill calls upon the defendants, the executors of James Darrach, to discover whether rents, and other sums of money belonging to the ward were not received by their testator beyond what are credited in the aforesaid account, and whether divers sums of money did not remain in the hands of their testator from time to time, on which no interest is allowed in said settlement; and whether a sum of money was not withheld by the executors from her guardian, Mr. Bradford, under the pretence of the same being due by the said William Bradford, in his individual capacity, to the estate of James Darrach; to produce the books of their testator, which contain many entries or accounts respecting the estate of his said ward. The prayer of the bill is for an account of the guardianship transactions of James Darrach.

To this bill the defendant filed a plea, setting forth, that on the 20th of October 1809, the orphan's court of the city and county of Philadelphia, on the petition of the grandmother of the said Elizabeth Knight, then seven years of age, appointed James Darrach her guardian; the duties of which he undertook, and exercised until the time of his death, which happened on the 16th of February 1816. That on the 17th of September 1817, the said Elizabeth, being then of

the age of fourteen years, chose, and the orphan's court appointed William Bradford, Jun., and Thomas Vanzant her guardians, who continued as such until she arrived at full age. That the defendants, as executors of James Darrach, filed in the orphan's court the account of their testator of his guardianship of the said Elizabeth; and on the 19th of July 1816, auditors were appointed by the said court to settle and report on the said accounts. That one of the guardians of the said Elizabeth appeared before the auditors, and examined the said account. with the vouchers, altered some of the items in it, charged interest on moneys in the hands of the guardian, thereby increasing the balance due to·the ward, which account, so altered and examined, was reported to the said court, and was, by the decree of the said court, allowed and confirmed, and the same remains unappealed from or reversed on error. Which settlement, report, and decree, the defendants, after protesting that there are no errors in the same; plead in bar of the bill, and of the account and discovery thereby prayed. [Bill dismissed.]

Mr. Bayard and J. R. Ingersoll, for plaintiffs.

Mr. Dwight and Thomas Sergeant, for defendant.

WASHINGTON, Circuit Justice. This cause having been set down to be argued on the plea, the allegations contained in it must all be taken as true. The single question which arises upon the facts stated in the plea is, whether the account of the guardianship of James Darrach, which by the decree of the orphan's court was allowed and confirmed, is conclusive or not, so as to be a bar to the discovery and relief sought to be enforced by this bill?

The general principles of law ,in respect to the conclusiveness of the judgments and decrees of the domestic tribunals of the country are well settled, and perfectly intelligible. A judgment or decree of a court of competent jurisdiction, directly upon the point, is conclusive between the same parties, or their privies, upon the same matter, coming directly in question in another court of concurrent jurisdiction. The rule is founded upon considerations as well of abstract justice as of public policy which forbids the litigation of any matter which has been once fairly determined by proper and competent authority between the same parties, or those standing in the relation of privies to them. If the matter, or the parties be different, the former judgment, if admitted in evidence at all, as in particular cases it may be, can be so only as prima facie evidence, but not conclusive. And so extensive and universal is this principle, that it includes the judgments or determinations of tribunals having competent authority to decide, whether they be of record or not. Where the matter adjudicated is by a court .of peculiar and exclusive jurisdiction, and the same matter comes incidentally before another court, the sentence of the former is conclusive upon the latter, as to the matter directly decided, not only between the same parties, but against strangers. Duchess of Kingston's Case, 20 Howell St. Tr. 355; Strange. 481; Doug. 407; 2 H. Bl. 416; Harg. Law Tracts, 446. The subjects of inquiry then in the present case are: Had the orphan's court jurisdiction of the matter on which they made their decree? Is that the same matter which this bill seeks to litigate in this court? Are the parties the same, or in privity with those who were parties in the orphan's court? And lastly, how far is that decree binding on the plaintiff in consideration of the infancy of Elizabeth Knight at the time it passed?

1. By the act of assembly of 1713, of this state, "for establishing the orphans' courts," they are declared to be "courts of record," with power to call on executors, administrators, guardians, and others, who are entrusted with, or accountable for property, real or personal, belonging to any orphan, and cause them to exhibit true and perfect inventories, and accounts of the said estates. By the third section of this act, the orphan's court, upon complaint being made that any person having the care and trust of a minor's estate, is like to prove insolvent, or shall refuse or neglect to exhibit true and perfect inventories, or to give full and just accounts of the estates come to their hands or knowledge; is required to cause such guardians or tutors of orphans or minors, to give such security as the court may think proper. The sixth section provides, that guardians shall not be liable for interest but for the surplusage of the estate remaining in their hands or power, belonging to the minor, when the accounts of their administration are, or ought to be settled and adjusted before the orphan's court, or register general, respectively. The eighth section invests this court with a power to issue attachments for contempt, against those who have been summoned to appear therein, and to enforce obedience to their warrants, sentences, and orders concerning any matter cognizable therein, as fully as any court of equity can do. The party aggrieved by any final sentence of the said court is, by the succeeding section, allowed an appeal to the supreme court. The eleventh section declares, that, when any minor shall attain to full age, if the person entrusted or concerned for them as before mentioned, shall have rendered his accounts to the orphan's court, according to the direction of this and other acts, and paid the minor his full due, the minor shall acknowledge satisfaction in·the said court; and if he refuse to do so, the court is required to certify how the said person concerned has accounted and paid, which shall be a sufficient discharge of the guardian, &c., who

shall so account and pay, and thereupon his bond shall be delivered up and cancelled. By the tenth section of the act of 1807, where the personal estate or a minor is insufficient for his maintenance and education, the orphan's court may allow the guardian to sell so much of the real estate as may be necessary for those purposes; and, in a note to Smith's edition of the Laws (volume 1, p. 87), he observes, that the persons directed to sell, are most commonly obliged, by the acts authorising the same, to exhibit their accounts for settlement in the orphan's court. Upon a view of the above provisions respecting the orphan's court, I could not entertain a doubt, were the question before me for judgment for the first time, that that court has jurisdiction to settle and to allow or confirm the accounts, of guardians, and finally to decide upon the different items of those accounts, subject to the reversing and correcting jurisdiction of the supreme court. But if this point were at all doubtful, I take it to be settled by the decision of the supreme court of the state in Richards' Case, 6 Serg. & R. 462. That case came on upon a rule to show cause why the wards should not be permitted to appeal on giving security for costs only; in which it was decided that an order of confirmation by the orphan's court of a report of auditors on the final settlement of a guardian's account is a final decree; but that that court has no authority to go further, and to decree payment of a balance from the ward to the guardian on such settlement. "It is going far enough," observes the learned judge who delivered the opinion of the court, "to say the confirmation of the account shall discharge the guardian, without directly involving the ward in personal liability." It is added, "the orphan's court is ex officio the protector of the ward, and interferes no further than to compel the guardian to account with him."

2. The next inquiry is, whether the matter decreed by the orphan's court, is the same which this bill seeks to litigate? Upon this subject there can be no doubt. The matter presented to that court by the executors of James Darrach for its consideration and decision, was the guardianship accounts of their testator, of the estate of his ward, Elizabeth Knight. That account was referred by the court to auditors, who made their report, stating the balance due by the decedent to his late ward, and this report was by a decree of the said court allowed and confirmed. The object of this bill is to open that account for the purpose of enabling the plaintiff to surcharge and falsify it in the particulars stated in the bill. The prayer of the bill, both as to discovery and relief, is confined to that object.

3. The next inquiry is, was Elizabeth Knight, in whose right the plaintiff claims, a party to the proceedings in that court upon which the decree of confirmation was passed? The plea states that her guardian, duly appointed by the orphan's court, appeared before the auditors, litigated the account presented by the executors, and by objections successively made to some of its items, increased the balance which was finally reported and decreed in favour of his ward. Will it be doubted that he legally represented his ward, so as to make her a party to the proceedings before that court? By the seventh section of the act of 1713, before referred to (1 Smith, 184), the orphans' courts are authorized to appoint guardians, next friends or tutors, over minors; "who shall be allowed and received without further admittance to prosecute and defend all actions and suits relating to the orphans or minors, in any court of the province."

Lastly, it is to be seen, how far the decree of the orphan's court, made during the minority of Elizabeth Knight, is binding upon her, or those claiming in her right? The general rule of the court of equity is, that no decree can be made against an infant, without giving him a day to show cause after he comes of age. When he is plaintiff, he is, unless under extraordinary circumstances, as much bound by a decree, and as little privileged, as an adult. And even in the former case, he will not be permitted to travel into the account, or where a foreclosure has been decreed, to redeem by paying what is reported due; but is only allowed to show an error in the decree. If at law he suffer a recovery, he is so far bound, that he cannot enter on the land until he has reversed the judgment upon writ of error.

It is probable that in this case, the plaintiff in right of his wife, might be permitted, in the orphan's court, to show cause against the decree of that court rendered during her infancy, by showing specific errors in the account, or that the subject might be re-examined in the supreme court by appeal or writ of error. As to this matter, however, it would not become me to give an opinion. But it is clear to my mind, beyond all question, that the correctness of the decree of the orphan's court cannot be examined into by this court, which can only claim to exercise concurrent jurisdiction to compel guardians to settle their accounts where they have not done so before some other competent tribunal.

The plea therefore, averring that the balance decreed by the orphan's court has been paid, and relying upon that decree in bar of the other parts of the bill, is, what it professes to be, an answer to the whole bill, and consequently I must decree the bill to be dismissed with costs, but without prejudice to any remedy which the plaintiff may think fit to pursue elsewhere.