TURNER vs. BELDEN, Ad'r.

The declarations of a person in possession of property are not admissible as evidence in his favor, or in favor of those claiming under him to shew title in him.

| 9 | 797 |
|---|---|
| 56a | 539 |
| 9 | 797 |
| 89a | 60 |

APPEAL from Howard Circuit Court.

CLARK, for Appellant.

It is insisted by the appellant that the circuit court committed error, for the following reasons:

1. The rights of the plaintiff's intestate to the slaves, depended on the fact whether the defendant had given them to his daughter. The evidence of a gift was not by any means certain; indeed there was no evidence of an absolute gift, but that the slaves were placed in the

possession of Pulliam upon trial, with an expressed intention to give them, if they suited—the possession being delivered to Pulliam with this understanding—the gift was not completed, and was not intended to be until the slaves had been tried, and the defendant informed that they suited. It was only a promise to give on condition, which condition was never complied with. The third instruction, therefore, was too broad, and is in contravention of a well settled principle of law; 2 Iredell, N. C. Rep. 361; Adams vs. Hays, 2 Alabama Rep. 118; Sims vs. Sims, 2 J. R. 52; Noble vs. Smith.

2. That the possession of Pulliam in this case, under the circumstances, was the possession of Turner; the slaves having been placed in his possession by Turner for a particular purpose, he held them as bailee for Turner, the right to him not having passed by the special possession, and could not pass according to the evidence, until Pulliam notified Turner that the negroes would suit. See 8 Mo. R. 346, Allison vs. Bowles; Harden 531, Woods vs. Chism; 1 Dana Ky. R. 110, Pool vs. Atkinson.

3. That the question of title in this case depending on possession, and the manner in which it was acquired, it was not competent for the plaintiff to use in evidence Pulliam's declaration claiming the property as his. Such a rule would enable any person having property in his possession for a special purpose, to gain the absolute title by a mere claim of right, although such claim was in contravention of the principles of true honesty and fairness. By such a rule, a fathers' intended bounty could be controlled by a mere claim before the gift had actually been made; this being the case, the court ought to have given the fifth and sixth instructions asked for by the defendant. See 1 J. R. Warring vs. Warring, 340; 8 Wend., Welland Canal vs. Hatheway, 480; 4 Cowen, Jackson vs. Cole, 587; 2 Rowle, 241, 2 J. J. Marshall, Talbot vs. Talbot, 4; 4 Bibb, Canole vs. Early, 270; Cowen's notes on Ph. Ev., page 154, note 165, Greenleaf's Ev. pages 120, 176, 203, 223; 5 Mo. R., Wilson vs. Woodruff; 8 Mo. Rep., McLean vs. Rutherford.

4. That this being a suit between Pulliam's representative and Turner, none of the reasons usually invoked in favor of purchasers and creditors can apply. It is a pure question of right, depending on the facts necessary to constitute a gift, there being no pretence of a purchase or other conveyance. It is contended that the facts proved do not constitute a gift, and the instructions given by the circuit court on that branch of the case were erroneous; 8 Mo. Rep., Allison vs. Bowles, 346, and authorities there cited.

5. That admitting the correctness of the general principle, that the

Turner vs. Belden, adm'r.

declarations of one while in possession of property may be used as evidence in his favor, yet such a rule is never applied as between the parties, unless to explain the nature of possession; certainly never to give title. But in this case the court allowed the declaration of Pulliam to go in evidence, not only while he had possession, but before he obtained it; and also as to how he got it, and that too when the question to try, was his title to the property claimed. Upon the principle decided by the circuit court in this case, a person who had the possession of property on loan, or for any special purpose, might acquire the absolute right by holding over, and when he was sued just prove that he had claimed the property as his while he had it, and that claim made, perhaps, in fraud of the true owner, will secure him the property. See authorities cited on the 2nd and 3rd points.

6. It is very clear that the verdict in this case is against the evidence; there is not a particle of evidence that Pulliam ever claimed the children of Ellen, or that they were ever in the possession of Turner. A new trial ought then to have been granted, admitting that the court committed no error in ruling the law on the trial.

LEONARD & DAVIS, for Appellee.

The defendant objects to the declarations of Pulliam given in evidence by plaintiff, made by Pulliam while in possession of the slaves, that they were his own property. In this we think the circuit court decided the law correctly. These declarations are part of the *res gestæ.* See Williams vs. Vanmeter, 8 Mo. Rep. 342; Greenleaf, 120. See 2 Ph. on Ev. p. 585, 596, 7, 8, and 601, 2.

It is also objected, that the court below permitted the plaintiff to prove that Turner, at the time of the marriage of his daughter, and ever since, was wealthy. We think that where a man's daughter marries, and he sends slaves along with her, his circumstances being such that he could well spare them, that the law will construe his act as an intent to give, in the absence of any declarations touching the subject. See 5 Monroe, 503 ; 3 Hen. & Mun. 132, Moore's, adm'r vs. Dawney et al.; Greer vs. Mullekin, 5 Mo. R. 489.

Turner's counsel also contends that the letter written by the intestate (Pulliam) to the witness Pearson, and read in evidence to the jury, was improperly permitted by the court. The letter was produced by the witness, Claiborn F. Jackson, and offered as rebutting evidence to the testimony of defendant's witness, Warson, who had testified that

Turner wrote the memorandum sent by him with one Short, who went after the negroes to the house of Pearson; witnesses Pearson and Jackson having proved this letter to be the same spoken of by Warson before it was read to the jury. (See instructions of Turner withdrawing the effect of the letter from the jury.)

It is also insisted that the fifth and sixth instructions asked by Turner on the trial below, were improperly refused. That depends upon the admissibility of Pulliam's declarations, as to his ownership of the slaves while in his possession, and treated by him as his own property. See also 4 McCord, 262, and Pool vs. Bridges, 4 Pickering, 378, and cases referred to as above; 2 J. J. Marshall, 383.

Also, the giving of the 3, 4, 5 and 6 instructions asked by the plaintiff below, is assigned for error. It is believed these instructions were correctly given.

When Turner left Pearson's, he instructed him to deliver the negroes to Pulliam or his order, in the event he got them back from Fizer. The order, therefore, sent by Short was in pursuance of the original authority given by Turner.

The record shows that the negroes were continuously in the possession of Pulliam, up to the time of his death, from the time they came from Pearson's.

NAPTON, J., delivered the opinion of the court.

This was an action of trover brought by the adm'r of E. R. Pulliam, to recover the possession of a negro woman named Ellen, and her two children. The plaintiff had a verdict and judgment.

The facts of the case, so far as they are deemed material, were as follows: In 1841 Pulliam married the daughter of Turner, and shortly after the marriage went to housekeeping. Upon this occasion, Turner sent with his daughter a servant girl, named Sarah who remained in the possession of said Pulliam until the winter of 1841–2; when the girl was returned to Turner on account of her not suiting his daughter Mrs. Pulliam. In January, 1842, Turner applied to one Pearson, of Saline county, for the purchase of the slave Ellen, and informed Pearson that it was his wish to purchase a servant for his daughter, Mrs. Pulliam, and if the girl Ellen would suit, it was his design to give her to his said daughter. After some negotiation on the subject, Pulliam and Turner having both seen the girl, the purchase was concluded; the slave and her children were sent to Pulliam, and the purchase money paid by Turner. Pulliam continued in possession of the slave until his

death, which took place in November, 1842. Evidence was given on the part of Turner to show that the gift to his daughter was not absolute, but upon the condition that if the slave pleased her, it was to be her's; if not, that the slave should be returned.

The plaintiff gave evidence conducing to show the contrary; and amongst other evidence, the declarations of Pulliam whilst he had possession of the girl, of his absolute title, were given in evidence. To the admission of this testimony exceptions were taken.

The court, at the instance of plaintiff, instructed the jury as follows:

1. "If the jury believe from the evidence that the defendant gave the slaves in controversy, or any of them, to his daughter, who was then the wife of the intestate, Pulliam, and that the slaves so given were in the husband's possession during the marriage, they belonged to the husband and on his death vested in the administrator.

2. "In order to constitute a valid gift of a slave, it is not necessary that there should be a deed or any writing manifesting the gift.

3. "In order to constitute a gift it is sufficient that the father placed the slaves in the posesssion of his daughter, with intent that they should be her property; and if they were originally placed by the father in the daughter's possession on trial to see whether they would suit, and he afterwards permitted them to remain with her, with intent that they should be her property, it was a valid gift to her.

4. "If the jury find for the plaintiff, they ought to find the value of the slaves belonging to plaintiff, converted by defendant to his use, and they may give interest on that value from the time of the conversion to the time of finding their verdict.

5. "If the jury believe that Turner·bought the slave Ellen and her children for his daughter, and caused them to be delivered to her, with intent that they should belong to her, that this is a valid gift, although Turner paid for them with his own money, and took the bill of sale in his own name.

6. "That if they find from the evidence that Elijah R. Pulliam had the slaves in controversy in his possession at the time of his death, that such possession is presumptive evidence that he owned said slaves, and the jury are bound so to find, unless the contrary is made out in proof."

The court also gave the following instructions at defendant's instance:—

1. That if the jury believe from the evidence that the defendant Tarlton Turner, purchased the negro woman Ellen and her children, and

paid for the same, they will find for him, unless they believe he sold or gave the same to Pulliam, subsequent to the purchase.

2. That the circumstance of the negroes being in Pulliam's possession, connected with his claim of right, is not by any means conclusive evidence of title in Pulliam, but such possession may be explained.

3. That in this instance, Turner had a right to place in the hands of Pulliam, his son-in-law, the negroes in question, and to permit them to remain there for any length of time under five years, and that by so doing, he, Turner, did not lose his right to the same, unless they believe he conveyed or gave the same to Pulliam.

4. That although the jury may believe that Turner, when he purchased the woman Ellen, intended to give her to his daughter, or Pulliam, and that he put her in the possession of Pulliam, yet they will find for Turner, unless they believe he had actually given or sold her to Pulliam, or Pulliam's wife.

5. That the request of Pulliam to Pearson to make the bill of sale to him, is no evidence that Turner had given the negroes to him, unless the jury believe Turner knew the contents of said letter.

6. That there is no evidence that he, Turner, did know the contents of said letter.

7. That in this case the plaintiff is the representative of Pulliam, and that it requires the same evidence to entitle him to recover, that it would to entitle Pulliam, if alive and here prosecuting the suit in his own name.

8. That although the possession of Pulliam of the negroes is presumptive evidence of title, yet that presumption may be rebutted by the facts, and circumstances, under which he got and kept possession, with the other facts and circumstances.

9. That whether the defendant did give the said negroes to Pulliam, is a matter of fact for the jury to consider from all the facts and circumstances given in evidence.

The following instructions were asked and refused :

1. That the jury are to disregard all declarations of Pulliam, made while in possession of the negroes, offered in evidence by the plaintiff, which make in favor of the plaintiff's claim to the negroes.

2. That the declarations of Pulliam, as to who the negroes were bought for, are no evidence, unless made in presence of Turner.

The objections to the judgment of the circuit court, are principally based upon two points, the instructions, and the admission of Pulliam's declarations in evidence.

1. We consider the declarations of Pulliam, made subsequently to

the transfer of the negroes, setting up his absolute title as inadmissible. Declarations of a deceased person, made whilst in possession of land or personal property, in disparagement of his title, have been admitted as legitimate evidence, upon the principle that they constitute a part of the *res gestæ*, and illustrate the character of the possession. Possession is *prima facie* evidence of ownership, and what is said by the possessor to cut down his own title is evidence. Judge Cowen, in his notes to Phillips, (Phillips Ev. 2, 569,) seems to entertain the opinion that the rule is the same where the declarations sustain, or enlarge the apparent interest of the declarant. He lays down the proposition broadly, "that possession of real estate for a long time, may be qualified, and explained by the declarations of the possessor, the apparent owner in fee being thus cut down to the mere *squatter*, and the apparent *squatter* elevated to the owner in fee." In the same way, he adds, the apparent. general owner of personal property, may be turned into a bailee or trespasser, and *e converso*. The first branch of his proposition is well settled law, and in support of it, the learned annotator cites a variety of cases; but upon a careful examination of all the cases as stated by him, I do not observe any one which supports the position, that the squatter or trespasser can by his own declarations elevate his title into a fee simple, or that the bailee or trespasser, of personal chattels, can by his own declarations convert his bailment into an absolute interest.

Phillips lays down the doctrine as it was decided in the case of Human vs. Pettit, (5 Barn. & Ald. 223,) but carries the principle no farther. "The declaration of a deceased occupier of land, that he rented it under a certain person, is evidence of that person's seizen; it is evidence against a party claiming under the deceased, as his heir at law, to explain the nature of the occupation, and to show that it was not adverse."

Professor Greenleaf seems to coincide with Judge Cowen. "In regard to the declarations of persons in possession of land," says Mr. Greenleaf, in his treatise on evidence, "explanatory of the character of their possession, there has been some difference of opinion, but it is now well settled, that declarations *in disparagement of the title* of the declarant, are admissible as original evidence. Possession is *prima facie* evidence of seizen in fee simple; and the declaration of the possessor that he is tenant to another, it is said, makes most strongly against his own interest, and therefore is admissible. But no reason is perceived why every declaration, accompanying the act of possession, whether in disparagement of the declarant's title or otherwise, if made in good faith, should not be received as part of the *res gestæ*; leaving

its effect to be governed by other rules of evidence." The cases cited by the author to support the suggestion here made, at least such of them as are accessible, are cases in which the declarations admitted, were uniformly against the interest of the person making them, or at least derogating from the title which his possession alone would have implied.

This question was noticed by this court in the case of Foster & Foster vs. Wallace, 2 M. R. 231; Foster & Foster vs. Nowlin, 4 ib. 24; and Wilson, adm'r. of Owens vs. Woodruff, 5 ib. 40. In the first case, it was held that the declarations of a person in possession of slaves, asserting the title of the declarant, were clearly inadmissible. In the case of Foster vs. Nowlin, evidence of this character was admitted, and the court seemed to place its admissibility principally upon the ground that it was in that case legitimate proof to rebut the evidence of previous declarations made by the same party in disparagement of his title. In the case of Wilson, adm'r. vs. Woodruff, the court take this view of the opinion in Nowlin vs. Foster, and concede that the testimony could only be supported as rebutting evidence.

But we apprehend that the decision in Foster vs. Nowlin cannot be sustained; for it does not follow that because a man's declarations against his interest may, under particular circumstances, be given in evidence, his subsequent declarations to support that interest will rebut or diminish the weight of his prior declarations.

2. To the instructions given by the circuit court, we see no objection, except such of them as apply to Pulliam's declarations in support of his title.

As the case will be remanded for a new trial, because of the admission of improper evidence, we refrain from any opinion as to weight of evidence.

Judgment reversed and cause remanded.