GEORGE STONE et al., Appellants, v. JONATHAN WOOD, Administrator *de bonis non* of the estate of Calvin R. Stone, deceased, Appellee.

APPEAL FROM PIKE.

The judgment of a county court, allowing the debt of a creditor against an estate, is, as between the creditor and the administrator, conclusive, till reversed or impeached for fraud.

But when an administrator applies for leave to sell the real estate for the purpose of paying such judgment, it is not conclusive as against an heir, and he may contest the application, unless he has been made a party to the judgment, by joining in taking an appeal from it to a superior court.

An administrator is not bound by law, to pay taxes on the real estate left by the decedent.

A judgment against an administrator, is not a judgment against, or a lien upon, the land left by the decedent.

A creditor having a judgment against an administrator, cannot sue out a *scire facias* upon the judgment against an heir, to make it chargeable upon the land.

An heir is not a privy to a judgment against an administrator.

A judgment against an administrator is *prima facie* evidence of the existence of a debt against the estate, as against an heir.

IN October, 1851, Jonathan Wood, administrator *de bonis non* of Calvin R. Stone, deceased, petitioned the Circuit Court of Pike county, showing that Stone died in the year 1838, intestate; that administration upon his estate was first granted to one Peabody, who died before any settlement whatever was made of Stone's estate; that in February, 1841, letters of administration *de bonis non* were granted to said Wood, who took upon himself the business of said administration; that Stone left no personal property in the State of Illinois; that a considerable amount of indebtedness was proved against Stone's estate; that estate was insolvent so far as personal estate was

12

concerned; that petitioner was ordered by the Probate Court
to petition for the sale of real estate, which he did in September, 1841; order for sale granted, and sale made, and proceeds
applied in discharge of indebtedness; that account current was
rendered and approved, leaving a balance of $45 in the hands
of petitioner; that since then, no personal property of deceased
has been discovered; that at April term, 1851, of Pike County
Court, one Lippincott sued petitioner, who appeared in said
County Court by himself and attorney, and defended, but said
Lippincott obtained an allowance against the estate of Stone for
$332.65, to be paid out of property not theretofore inventoried;
that Lippincott filed an inventory of real estate, (describing it);
that upon the filing of this inventory, the County Court ordered
petitioner to make application for the sale of this real estate;
petition sets forth the notice given and the names of the heirs.
The petition further states that I. N. Morris, at the September
term of said County Court, was allowed against Stone's estate,
the sum of $2,259, to be paid out of any money or estate not
inventoried or accounted for; that petitioner appeared by attorney, and contested this claim set up by Morris; that Morris
filed an additional inventory, and that petitioner was directed
to apply for leave to sell this additional property, praying that
the widow and heirs of Stone might be made parties, etc., and
for an order of sale. A supplemental petition was afterwards
filed, setting forth the discovery of other real estate, with a
prayer for the sale thereof.

A guardian *ad litem* was appointed to represent the minor
heirs, who answered, admitting the appointment of administrators, but denying any knowledge of the claim of Lippincott, and
that Stone was indebted to him, averring that said wards were
non-residents, and were never made parties to any proceeding
taken in reference to the proving of the claim; asserting that
Stone died in April, 1838, and that the notes which were the
foundation of Lippincott's claim, bear date and were actually
made by one George Bartlett, (who signed said notes, " W. S.
Mill Co., by George Bartlett, Agent,") in February, 1839, long
after the decease of Stone; that if Stone was a partner in any
mill company, the partnership was dissolved by his death. The
answer of the guardian *ad litem*, also set out the origin of the
claim of Morris, which was, that the father of Morris had
accepted and paid two drafts by Stone upon him to the amount
of twelve hundred dollars, for land sold by Stone to the father
of Morris, the value of which had been fraudulently represented
by Stone to the father of Morris, in consequence of which, the latter repudiated the sale, and I. N. Morris, becoming the beneficial
owner of the claim proved against the estate of Stone, arising

out of this transaction, his claim, with interest included, amounted to the said sum of $2,259. The answer of the guardian *ad litem* stated objections to the allowance of this claim, and asked to have the petition for an order of sale dismissed. Exceptions were filed to the answer of the guardian *ad litem*. The fourth and fifth exceptions were sustained by the Circuit Court.

The fourth exception was as follows: " Said answer does not show either fraud or mistake in the allowance by the County Court of the claims of the said I. N. Morris against the said estate," and the fifth as follows: " Said answer seeks to go back of the *adjudication* of the County Court, and set up by way of bar to a sale of the land, matters *adjudicated* and settled; the said court having full power and authority to make the said allowances, and *adjudicate* upon said claims."

A sale of the lands in accordance with the prayer of the petition, was ordered at December term, 1853, of Pike Circuit Court, WALKER, Judge, presiding. The heirs of Stone bring the case here, and assign errors.

W. A. and J. GRIMSHAW, for Appellants.

C. L. HIGBEE, for Appellee.

CATON, J. The administrator of the estate of Calvin R. Stone, deceased, applied to the circuit court for leave to sell real estate for the payment of debts which had been allowed against the estate by the county court. Upon the hearing of this application in the county court, the heir appeared and offered to prove that the claims which had been allowed by the county court, and to pay which the real estate was asked to be sold, were not legally and justly due from the intestate, and that they had been illegally and unjustly allowed by the county court. The county court refused to allow this defense, from which decision the heir has brought this case here for review. This requires us to determine what effect is to be given to the order of the county court allowing the claims as against the heir upon such an application. The true construction of our statute of wills must determine the question. We have already decided in two cases, that the order of the county court allowing the debt of a creditor against the estate, is a judgment of a court of competent jurisdiction in favor of the creditor and against the administrator, and, as between those parties, it is necessarily conclusive till reversed by a superior tribunal, unless impeached for fraud. Is such judgment conclusive against the heir when the administrator applies to the circuit court for leave to sell the real estate for the payment of such judgment ?

We think not. Under our law the legal title to the personal estate is in the administrator, while the title to the real estate descends to the heir at law. The administrator is the sole representative of the personal estate, but not of the real. property. The judgment then was conclusively binding upon the personal estate, for the representative of that estate was before the court, and a direct party to that judgment; but the heir was not before the court, nor a direct party to the judgment. He was not notified to appear upon that trial, nor given an opportunity to appear and contest the validity of that judgment. It is true, the statute gives the right to come in and appeal from such judgment, provided he happen to hear of it in time to take the appeal; but it is not made his duty to do so, nor has the law provided that he should have notice to enable him to do so. Had he thus appeared and made himself a party by taking an appeal, he, as a party, would no doubt be bound by the judgment rendered on the appeal. Till he does thus come in, he certainly is not a party, nor is he even a privy, except so far as he may have an interest in the personal estate, as being entitled to the residue after the payment of the debts. But as regards the real estate, we think his position essentially different. There the title is vested in him, and is placed beyond the reach or control of the administrator, except the court is vested with authority, upon a special proceeding against the heir, to direct him to sell the title of the heir. Nor is the administrator bound to protect the real estate. He is not even authorized by law to pay taxes upon it; but it is in all respects vested in and under the control of the heir. To it the administrator is an utter stranger. The judgment against the administrator is not a judgment against, or a lien upon, the land. The creditor cannot, under our statute, even sue out a *scire facias* upon that judgment against the heir so as to make it chargeable upon the land, as is the case in some of the States. Were such the law, the rule might be different. Were we to admit the heir, so far as it might affect the real estate, a privy with the administrator to that judgment, the conclusion would inevitably follow that he would be bound by it. But such, we think, was not the intention of the legislature. Before the administrator can acquire any right to interfere with or sell the real estate, he is required to institute a proceeding in the circuit court citing the heir before it, and requiring him to show cause why the lands should not be sold to pay the debts of the estate. The law then, for the first time, calls him into court, and gives him an opportunity of being heard, and of contesting the validity of the claims, to pay which, his land is asked to be sold. He is cited into court

for some purpose, certainly. It may be said that that purpose is to enable him to show that the personal estate is not exhausted, and that hence there is no occasion to resort to the real estate. The statute does not thus limit his rights, but he is required " to show cause why it should not be sold for the purposes aforesaid." And what were those purposes? In the language of the statute, it is to pay the debts of the intestate. The administrator is required in his petition to give a schedule of those debts. Shall it be said that none of them shall be contested by the heir? There is as much authority for contesting a debt which has been passed upon and approved by the probate court, as one which has been admitted by the administrator to be just, and as such placed in his schedule. It is true, there may not be as much necessity in the former as in the latter case, for there is a greater presumption that a claim is just which has received the sanction and judgment of the probate court, than one that has not; and for that reason the judgment of the probate court may be held to be *prima facie* evidence of the validity of the demand. But the terms of the statute are broad, and give him as much right to contest the one as the other. It may be said, that the creditor is not a party to the proceeding on the application to sell the real estate to pay his debt, and is not called upon to appear there to establish his claim, and the administrator may not have the means of doing so. That is true; and it is as just and proper to hold that the creditor is not bound by the defense which has been set up by the heir in a proceeding to which he was not a party, as it is to hold that the heir was not bound by the judgment in favor of the creditor, which was established in the absence of the heir, but it is no more so. The creditor not being concluded in his absence by the decision of the circuit court, refusing to allow his claim on the application of the administrator to sell the real estate of the heir, he has, if he thinks he can establish the validity of his claim, but to sue the heir at law, and thus raise the question directly between the parties immediately interested, and, if he can obtain a judgment against the heir, subject the lands which have descended to him to sale for its satisfaction. Thus, all parties have an opportunity of being fairly heard.

I have found no case in point, establishing a contrary rule. It is true the books are full of cases holding that privies as well as parties are concluded by the judgment of a court of competent jurisdiction, but none holding that, under a statute like ours, the heir is a party to a judgment against the administrator. Did the statute authorize the land to be sold under such a judgment, its effect would be very different.

But authorities are not wanting of the highest character directly upon the point. I shall only refer to the case of *Garnett* v. *Macon*, 6 Call. 308. Chief Justice Marshall in that case said: "The defendants insist that the decree against the personal representative of George Brooks, is conclusive evidence against the devisee of the existence of the debt.

"The cases cited by counsel in support of this proposition do not decide the very point. Not one of them brings directly into question the conclusiveness of a judgment against the executor in a suit against the heir or devisee. They undoubtedly show that the executor completely represents the testator as the legal owner of his personal property for the payment of his debts in the first instance, and is consequently the proper person to contest the claims of his creditors. Yet there are strong reasons for denying the conclusiveness of a judgment against an executor in an action against the heir. He is not a party to the suit, cannot controvert the testimony, adduce evidence in opposition to the claim, or appeal from the judgment. In case of a deficiency of assets, the executor may feel no interest in defending the suit, and may not choose to incur the trouble or expense attendant on a laborious investigation of the claim. It would seem unreasonable that the heir who does not claim under the executor, should be estopped by a judgment against him.

"In the case of Munford's heirs in this court, the question was decided against the conclusiveness of such a judgment, and I am not satisfied that the decision was erroneous.

"This case, however, varies from that in a material circumstance. In that case, however, the heir was bound by the obligation of his ancestor, and was liable to the creditor directly. In this case, the creditor is bound to proceed against the executor, and to exhaust the personal estate before the lands become liable to his claim. The heir as devisee may, indeed, in a court of chancery be united with the executor in the same action, but the decree against him would be dependent on the insufficiency of the personal estate. Since, then, the proceeding against the executor is in substance the foundation of the proceeding against the heir as devisee, the argument for considering it as *prima facie* evidence may be irresistible, but I cannot consider it as an estoppel. The judgment not being against the person representing the land, ought, I think, on the general principle which applies to give records in evidence, to be re-examinable, where brought to bear upon the proprietor of the land."

We are willing to hold, with this case, that the judgment against the administrator is *prima facie* evidence of the existence of the debt against the estate as against the heir, but

further than this, we cannot, with our view of the intention of the legislature and the rights of the heir, feel authorized to extend it.   If he can show, as he offered to do, that the claims were unjust, and that not one cent was legally due upon them from his ancestor, the doors of justice should not be closed against him.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*

SCATES, J., DISSENTING. · The only point upon which I propose any remarks is, as to the effect of a judgment of the county court in allowing a claim against an estate.   That court has jurisdiction of the subject of claims of the kind, and had of the particular claims involved in this suit, which were allowed by the court, and the administrator directed to make this application for a sale of the real estate to pay them.

This application is resisted by the heirs upon the ground that these debts are not due from the estate.   The question is therefore broadly presented, as to the extent to which heirs' are concluded by the judgment of the county court upon matters of debt and account, litigated before them.   As to the general rule, I need only refer to the cases of *Ralston et al.* v. *Wood*, 15 Ill. 168 ; *Gray et al.* v. *Gillilan et al.*, 15 Ill. 454, to sustain the conclusiveness of judgments upon parties and privies, and those deriving title through them, upon the matters investigated and involved in the issues in the particular cause.   And the policy of the law does not stop at the issues and facts in the record, but extends a like protection to property acquired in executing these judgments, though they be erroneous, and afterwards reversed.   See authorities cited in *Gilman et al.* v. *Hamilton et al.*, 16 Ill., *post.*

I do not propose again to discuss these questions which have been fully examined and discussed in the above cases, and are too well settled upon authority to require a re-examination.

It is not in the principles, but in their application, that a difference of opinion may exist, and difficulty be found.

If these judgments are held conclusive upon the heirs, it is contended their inheritance is exposed, after exhaustion of the personalty, to be taken for the debts, to the litigation and adjustment of which they are not parties, and have no opportunity of contesting ; and their rights may be sacrificed by the carelessness, negligence, ignorance or fraud of the administrator ; and but little hope left to tender years, of being able to expose this, or obtain redress therefor, upon arriving at years of discretion.

On the other hand, it is the creditor's right to have payment

out of the land, when the personalty fails.    If, after he has fully litigated and established his demand by proof, and obtained judgment for his debt, binding and conclusive upon him and the estate as to the amount, it should be again open to be disputed and litigated, and even totally disproved, between the administrator and the heirs, on an application for a sale of the land for its payment, in which he is no party, and has no right, notice or opportunity of being heard, his rights may be sacrificed by the same negligence, ignorance or fraud of the administrator.    Administrators would have little knowledge, inclination or opportunity to find and produce the necessary evidence to sustain a creditor's claims.    Yet, as the order of sale is frequently the only means of payment, a defeat of the application would be, in effect, a reversal of the creditor's judgment.    There is thus apparent mischief and hardship either way; but, to avoid one extreme, we should not run into the opposite.    The best solution of the difficulty will be found in an adherence to and application of analagous principles, in dealing with and administering this secondary real estate fund of assets.

At the common law, lands were not liable for debt, neither in the life-time nor after the death of the owner.    But when by statute it became liable, though in a limited extent, by analogy the liens and principles applicable to such a power and mode of disposition were soon applied to it, and statute debtors held it, and their heirs, devisees and purchasers took it, subject to these liabilities, for the satisfaction of creditors out of the annual issues.

Under our statute, lands are as entirely and completely liable for debts as personalty; and with but two distinctions, that the personalty is the primary fund, and, as such, the title and possession pass immediately to the administrator; the realty secondarily, and therefore it descends and the titles and possession vest *sub modo* in the heir, subject to be divested, if needed, for the payment of the debts, after exhaustion of the assets of the primary fund.

In the adjustment and recovery of debts and property of the estate, and litigation and settlement of demands upon it, the administrator represents the creditors, heirs, legatees and distributees by privity of estate, or by operation of law, so that his acts are binding, and judgments to which he is a party, conclude him, the creditors, and other claimants of the personalty, even including the sureties on the administration bond. (15 Ill. 168.)    These last, it is said in *Ralston et al.* v. *Wood,* above, may appeal from judgments on settlement of administrator's accounts.    Nor can there be any doubt of the right of the others to a like appeal from the "judgments, orders or decrees"

of the county court, upon like principle, under the 138th section of the statute of wills, (Rev. Laws, p. 564, Sec. 138.) Where does the analogy end, and the distinction begin? Is it to be found in the fact that the land is but a secondary fund, and as such the title and possession descend to the heir in the first instance? I cannot perceive any reason from this for a difference or distinction as to the power, authority and obligation of the administrator to settle, nor in the adjustment of the debts, and the application of the primary fund. Nor is any perceivable in the jurisdiction and conclusiveness of the judgments of the court thereon. If this power and jurisdiction is essential for the settlement of estates, to make a finalty of the administration, it must extend to and bind the realty as a secondary fund, at some time. What reason or analogy is there to sustain their semi-obligations, binding all interests as to the one fund, and of no obligation as to the other? The same heirs, legatees or distributees, are owners of the personalty also, subject to the same claim of creditors. If they are bound as to the personalty, it must be because they are privies in estate or law. The administrator does not take the personalty in his own right, but as trustee, for the use of the *cestui que trusts*, including both creditors and distributees, legatees and heirs. It is true, as respects the personalty, he takes the title and possession with the power and right necessary to fulfill the trust. At the same time and by the same means, he acquires the power and right, without title and possession, over the realty, as part of the same trust, and for the same objects. But the exercise of this power in relation to the realty, depends upon a contingency, the insufficiency of the personalty. Now, this deficiency is exhibited as the natural result of the fulfillment of the trust, in regard to the primary or personal fund. Before this fund can be applied and exhausted, he *must* ascertain what is due to creditors. Their debts *must be proven*, established and settled in an authentic and obligatory form, and one that will justify and discharge the administrator in paying; otherwise he would be guilty of a breach of the trust, and a devastavit of the fund. But all courts, I believe, have treated these orders or judgments of probate courts, allowing claims, not only as a justification for the payment, but have enforced them against administrators, and not only as to each creditor with respect to his individual claim, but as among all the creditors and distributees of a surplus. No other rule can be applied, for under it no man would act as administrator in a trust so full of hazard and perplexity, nor could any creditor or distributee receive his own with any confidence or assurance of keeping it.

I am reasoning from anology. When the law subjected lands to the payment of debts, through administrations, and to the same extent as the personalty, it simply postponed or deferred that charge upon it, until the other fund was ascertained to be insufficient, and which the administrator is required to make appear in a suit against the heir for the sale of the land. And in order to do this, he must show that he has made and filed an inventory, an appraisement bill, and a sale bill in the county court, and that he has applied the proceeds of the personalty, or such part as have come to his hands, towards the payment of the debts. Rev. Laws, 1845, p. 559, Sec. 108. In order to this, he is, by section 103, to make a just and true account of the personal estate and debts. Shall he be required anew, and like the creditor, to produce proof to establish every debt allowed by the county court? No man would accept an administration on such terms, unless with a view to defraud all parties.

By section 125, page 562, the county court is required to make out " an abstract from its records, of the debts and credits of such estate, and of the lands owned by such testator or intestate, from the inventory of such estate," and this shall be presented to the court on the application for the sale.

So far as these debts have been allowed by the court and passed into judgment, surely the administrator can be required to present no further or better proof than that judgment. For by section 95, the administrator shall give a general notice for filing claims, and all claims filed under it, and all that are filed upon special notice to the administrator, as by sections 116, 117 and 118, are regarded as regular suits, and full proofs required, and judgments given, and these, the administrator is, by section 120, required to pay. The county court may compel him to apply for an order of sale, (Sec. 114,) and he is chargeable with all the real estate that he can recover upon due and proper diligence; (Sec. 92.) The county court shall make an entry of all demands allowed, and file and preserve the papers, and if the administrator pay any demand before its allowance, he is required to establish the validity of the claim by the like evidence as is required in other cases. (Sec. 122.)

With all these safe-guards to creditors and heirs, is also the additional one, of appeal from " all judgments, orders or decrees" of the county court, " in favor of any person who may consider himself or herself aggrieved by any judgment, order or decree of the court." (Sec. 138.)

While the heir does not derive his right or title to the realty, through the administrator, he yet holds the land subject to the trust in the hands and power of the administrator, and so I deduce, by the strictest analogy, a privity in estate for the pur-

poses of the administration. I am not disposed to avoid, explain or modify the consequences to which this analogy leads me; and that is the conclusiveness of these judgments upon the heirs, and the sale of their estates. The stability and confidence of human affairs demand that judgments of courts possess this character, and have this effect upon the subject matter, as among all the parties and privies whose interests are involved. And it would seem to me from a careful examination of the decisions of the American courts, that the distinction taken, has been predicated upon the supposed importance and character of the property itself, rather than the relationship of its owner. They have looked to the inheritance under the law of primogeniture, as a semi-sacred property, and have forgotten the owner as a mere distributee of the surplus of the personalty under the English rule, and of the whole, personalty and realty, under ours. And I am unable, upon any principle of law, or rule of analogy, to give these judgments any effect at all against the heir, without extending a like and equal effect as to both funds, realty as well as personalty.

The first case on this subject, which I have found, and I suppose the precedent and leading case on this subject, was decided in 1810, by Judges Tucker and Fleming. (*Mason's Devisees* v. *Peter's Administrators*, 1 Munf. 444.) They held, that a judgment against the executors was no proof against the devisees of the land, nor the heir, whatever might be the case as to personalty, and it was put upon a want of privity. This last doubt as to privity in relation to the personalty, seems to have been overruled or settled otherwise in *Atwell's Administrators* v. *Milton*, 4 Hen. and Munf. 255, by holding the approval of the court to *prima facie* evidence.

Chief justice Marshall held a decree against the personal representative, as *prima facie* only as to the heir and devisee, and not conclusive. He admits that the administrator completely represents the estate for the payment of the debts, and is the proper person to contest the claims of creditors; yet its conclusiveness is denied, because he is not party to the suit, cannot controvert the testimony, adduce evidence in opposition, or appeal from the judgment. Then, again, the administrator may feel no interest in defending the suit, nor choose to incur the trouble and expense attendant upon a laborious investigation. Because the heir does not claim under the administrator, it is unreasonable he should be bound or estopped by a judgment against him. *Garnett* v. *Macon*, 6 Call. 337, 8.

For like reasons, the case in 1 Munford, 444, was followed and approved in *Neal* v. *McCombs*, 2 Yerg. 11, against the dissenting opinion of Haywood, J., who portrays the inconven-

iences, injustice and evils to the opposite interests, from the adoption of this rule. He puts it, I think, upon the true ground, by leaving it open to attack for fraud, as other judgments. The same doctrine is strongly implied in the principle laid down in *Grout* v. *Chamberlin*, 4 Mass. 611, 12, where it is held that an administrator *de bonis non cum testamento annexo*, cannot maintain a writ of error to reverse a judgment recovered by the original executor—and that such judgment is no bar to an action for the same cause, by the administrator. And so again in *Thayer et. al.* v. *Hollis*, 3 Met. 369. But the former was put upon a strict common law technicality, and the latter upon a presumption of fraud in the administrator, in not relying upon the statute of limitation to bar a stale demand. Although the question was not presented in the case of *Scott* v. *Hancock*, 13 Mass. 162, the reasoning of Jackson, J., tended strongly to this view of the subject.

Chancellor Kent, in *Mooers* v. *White*, 6 Johns. Chan. 385, quoted and approved the language of Jackson, J., though the decision was put upon a different ground, the staleness of the demand.

The case in 1 Munford, was referred to as law by Sudam Senator, in *Osgood* v. *Manhattan Company*, 3 Cow. 622, and again arguendo by the Chancellor in *Scott* v. *Young*, 4 Paige Chan. 556.

The case of *Callahan, Administrator*, v. *Griswold*, 9 Mo. 792, seems to favor the same doctrine; but the judgments in that case seem to have been fully impeached for fraud. Extreme cases form dangerous precedents. Such seems to have been the beginning of this series of decisions. There was no other proof but the judgment, taken upon a default, and evidently the judges believed there had been no testimony. The administrator had, by his negligence in suffering judgment, admitted assets; the creditor had, therefore, a remedy against him at law, and in refusing relief, on that account, by marshaling the assets on the land, the court deny the liability of the heir to lose his inheritance on a judgment against the administrator.

The case in Missouri was an apparently premeditated fraud, and, therefore, worse material for manufacturing a leading doctrine. The case before us is not free from the same influence. We see just enough to desire to look deeper into it. We know enough to think investigation called for. Ten years after an administration had been apparently settled, judgment is obtained on a note of intestate, bearing date after his death, and another large judgment, for misrepresentation, or for the consideration paid on rescinding a conveyance of land. We naturally desire to look into and inquire about the transaction. But it is impos-

sible to do so, without laying down a general rule, which must apply equally to all other cases, even those where we should not hesitate a moment to sanction all that had been done.

Some of the courts have very consistently carried out the legitimate analogies of the rule, and held that sureties of the administrators were not concluded by the judgments of probate courts, fixing the indebtedness of their principal. *McKellar* v. *Bowell and Campbell*, 4 Hawk. L. and Eq. 37; *McBride* v. *Clark et al.*, ibid. 43; *Armistead* v. *Hanamond*, ibid. 340.

This court held otherwise, in *Ralston et. al.* v. *Wood*, cited above. So held in Kentucky, in *Hobbs and another* v. *Middleton*, 1 J. J. Marsh. 179, and many others, I need not cite. In *Judge of Probate* v. *Robbins et al.*, 5 N. Hamp. 246, the court say, the decree of distribution to the widow as an heir, cannot be collaterally inquired into by the sureties of the administrators. And similar rulings are made in Pennsylvania. This was applied to an order of the court of ordinary for sale of land, as conclusive upon the heir in *McDade, Administrator*, v. *Burch, Administrator*, 7 Georgia, 559. So the order of the orphan's court, on settlement of a guardian's account, was held conclusive upon the subsequent guardian and the ward. *Blount and wife* v. *Darrach*, 4 Wash. C. C. 657. I cannot predicate any distinction upon a supposed difference between personal and real property, or the primary or secondary fund. Frequently the value of the realty is nothing in comparison with the personalty. Yet, before the heir can have either, disencumbered, the debts must be settled. If those having interests cannot trust, and are not to be bound by the acts of the administrator, and the judgments of the proper courts, upon the several transactions as they arise, there is no alternative, but a bill in equity, to make all parties together. This would be absurd.

The administrator is clothed with the power, and is charged with the duty, to make these statements, and under the inspection and sanction of the court; and they ought and must bind all interests affected, or they should bind none. They may be impeached for fraud. But until so impeached for fraud, or grossness of malpractices amounting to fraud, they should conclude all interests affected, and have their legitimate fruits in a due execution, by sale of property.

I agree with the court in giving the judgment all the effect they assign to it, but would likewise give it further full effect until impeached or reversed.