## Wm. H. Brown v. Mary E. Bear et al.

1. CHANCERY PRACTICE—*Sworn Answers.*—The rule in chancery is, that a sworn answer, in so far as it is responsive to the bill and fairly meets the allegations of the complainant, must be received as true, unless it is disproved by evidence amounting to the testimony of two witnesses.

2. JUDGMENTS—*Against an Ancestor not Binding upon the Heir in a Proceeding to Sell Real Estate to Pay Debts—Administration of Estates.*—Although a judgment may be binding upon the personal assets of an estate, it is of no avail against the heir in a proceeding to sell the

land for the payment of debts.  The heir may, notwithstanding the judgment, urge any infirmity in the original indebtedness.

**Creditor's Bill.**—Appeal from the Circuit Court of Clay County; the Hon. SAMUEL L. DWIGHT, Judge, presiding.  Heard in this court at the February term, 1901.  Affirmed.  Opinion filed September 4, 1901.

H. R. BOYLES and R. S. C. REAUGH, attorneys for appellant.

B. D. MONROE, attorney for appellees.

MR. JUSTICE BIGELOW delivered the opinion of the court.

This is a creditor's bill, brought by appellant against appellees, to compel payment of a judgment in favor of appellant, rendered by the Probate Court of Clay County against the estate of Oliver Bear, deceased.  Appellee Joseph Bear is a brother, and the other appellees are the widow and children of the deceased.

On the 19th of September, 1887, appellant and Oliver Bear became sureties for one Wm. E. Beaird on a promissory note for the sum of $500, payable to Eversman, Wood and Embring, bankers, at Effingham, Illinois.  Beaird, the principal on the note, defaulted in the payment of it, and appellant was compelled to pay the entire note.  On the 22d of December, 1887, appellant paid one-half of the note, and on January 6, 1888, he paid the balance—being $275.44, which, he alleges in his bill, is the share for which Oliver Bear became liable as co-surety with appellant.  At the time Oliver Bear signed the note as surety with appellant, he was the owner in fee of 207 acres of land, exclusive of a sixty-three acre tract which was his homestead; he was also the owner of a remainder in fee of fifty-seven acres, in which there was a life estate in one Henry Boorman.  On the 10th of October, 1887, Oliver Bear and appellee Mary E., his wife, conveyed all of his real estate, except the homestead, to appellee Joseph Bear.  Oliver Bear died on the 23d of January, 1892.  At the September term, 1896, of the County Court of Clay County, appellant recovered a judgment against the estate of Oliver Bear, deceased, for

the sum of $378.75. The bill charges that the conveyance of the real estate from Oliver Bear and wife to Joseph Bear, was a mere sham to hinder and delay the creditors of Oliver from collecting their claims against him, and that Joseph Bear was a party to the fraud. It is further alleged in the bill that Joseph Bear, for a consideration of $1,800, conveyed 120 acres of land to one Bailus Carter, and that the balance of the lands had been conveyed back to the heirs of Oliver Bear, subject to a life estate in Mary E. Bear, but the deed had not been placed on record. Appellee Joseph Bear was the administrator of Oliver's estate.

The prayer of the bill is, that out of the proceeds of the sale of the real estate by Joseph Bear to Bailus Carter, that Joseph be required to pay the judgment, and that the conveyances placing the title to the lands in the widow and heirs of Oliver Bear be declared null and void, and the judgment for $378.75 be declared a lien on the premises, and that enough of the lands be sold to satisfy the judgment.

The bill was filed on March 1, 1900. The answers of appellees Mary E. Bear and Joseph Bear were under oath, as required by the bill. A guardian *ad litem* was appointed for the minor defendants. The answer admits the recovery of the judgment as averred in the bill, but charges that the same is of no force and effect as against the estate; denies the fraud charged in the bill, or that the conveyance from Oliver to Joseph was made with the purpose of defrauding the creditors of Oliver Bear; denies that appellees had any knowledge of the claimed indebtedness of Oliver to appellant; admits the conveyance of the 120 acres of land to Bailus Carter, and charges the lands were not the property of Oliver at the time of said conveyance, or that he had any right or title to said lands; charges that the deed from Oliver to Joseph was made to secure a debt of $3,000 due from the former to the latter; denies that Joseph Bear had any personal property in his hands which was the property of the estate of Oliver, and charges the truth to be that Joseph, as administrator, had fully accounted for all per-

sonal property of said estate.  In addition to this answer all of the defendants filed a plea of the statute of limitations, alleging that whatever cause of action appellant may have for the relief sought by his bill, accrued more than five years before the filing of the bill.  Replication was filed to the answer, and testimony was taken in open court, with the result that appellant's bill was dismissed at his costs.

Many questions are discussed in the briefs, but it will be unnecessary to discuss any matters of law raised, for the reason we are of opinion the evidence failed entirely to make out a case authorizing the relief prayed for.

As to the 120 acres which were deeded to Bailus Carter, the evidence of Joseph Bear is, that this tract of land was not the property of Oliver at all; that it was included in the deed from Oliver to Joseph by mistake, and that this land was a part of the property which Oliver and Joseph inherited as tenants in common from their father, and before the deed was made from Oliver to Joseph it had already been deeded to the latter in the division of their father's estate.  His evidence further discloses the fact, that for some years prior to the deed of October 10, 1887, Joseph Bear paid the taxes on this land.  The testimony of Mary E. Bear, that her husband, Oliver Bear, claimed the land before it was deeded in October, 1887, we do not regard as of much significance, in the face of the fact that the answer denied the title of Oliver Bear to this 120 acres of land, and appellant did not attempt to disprove the title from the father of Oliver and Joseph.  There is a clear preponderance of the evidence that this land was the property of Joseph Bear, unaffected by the conveyance of October 10, 1887.  If, however, such is not the true scope of the evidence, the most favorable view we are able to take of the matter is, that there was a conflict of evidence.  We are unable to say that the court erred in its finding on this branch of the case, so that, whatever consideration Joseph Bear received for the conveyance to Bailus Carter was in fact his own property and not assets of the estate of Oliver Bear.

As to the balance of the land, 144 acres, which was included in the deed from Oliver to Joseph, the evidence shows, and such is the substance of the sworn answer of Joseph Bear, that Oliver was indebted to him on two promissory notes made on the 18th of September, 1886, and on the 1st of October, 1886, respectively, for the sum of $1,500 each, and that a judgment by confession had been entered upon these notes, for the sum of $3,493, on the 3d of October, 1887. The answer of Joseph Bear is, that the deed of October 10, 1887, was executed to secure this indebtedness.

The testimony of Joseph is that Oliver Bear settled and paid this indebtedness before he died; that by a deed of April 1, 1892, Joseph had reconveyed this 144-acre tract to the widow and children of Oliver Bear. The evidence further tends to show that the deed of October 10th, instead of being a conveyance for security, was in fact a purchase by Joseph from Oliver, for a consideration of $2,500; that Joseph was the administrator of the estate of Oliver Bear, deceased, and that he never inventoried this asset due from himself to the estate. But the evidence to support this theory is scarcely more than a conjecture.

The sworn answer of Joseph Bear is, that the deed was made as security to him for his judgment; and the rule in chancery is that a sworn answer, in so far as it is responsive to the bill and fairly meets the allegations of the complainant, must be received as true, unless it is disproved by evidence amounting to the testimony of two witnesses. (Stouffer v. Machem, 16 Ill. 553; Marple v. Scott, 41 Ill. 50.) The record presented is far from satisfying this rule.

But the evidence shows also that Joseph Bear, as administrator of the estate of Oliver, neglected to inventory this land as he ought, after the judgment had been satisfied, and after he had no further interest in the land by way of security. The delinquency of the administrator may be admitted in this respect; but how is that matter an answer to the plea of the statute of limitations set up by the heirs?

On January 6, 1888, appellant knew he had a cause of action against Oliver Bear, and after his death appellant

knew that this cause of action was a claim against the estate; and yet he never filed his claim against the estate until the August term, 1896, nearly nine years after the cause of action accrued.

Though the judgment held by appellant may be binding on the personal assets of the estate, it is of no avail against the heir in proceeding to sell the land for the payment of debts. The heir may, notwithstanding the judgment, urge any infirmity in the original indebtedness. Stone v. Wood, 16 Ill. 177; Hopkins v. McCann, 19 Ill. 113; Marshall v. Rose, 86 Ill. 374; Gibson v. Gibson, 82 Ill. 61.

That the bar of the statute of limitations fell in five years from the date appellant paid the judgment does not seem to be questioned; or, if appellant is within the saving provisions of section 19, chapter 83, Hurd's R. S., 1899, the evidence fails to show such fact.

Indeed appellant's argument substantially admits that as to the 144-acre tract, the plea of the statute of limitations is a complete defense.

There being no error in the record the decree of the Circuit Court is affirmed.