Shaw v. Camp.

## Catherine Shaw et al. v. William M. Camp, Executor.

1. TAXES—*When an Executor or Administrator May Pay.*—A tax assessed and due at the death of the testator, may be properly regarded as a debt against the deceased, and as such, paid by the executor or administrator; but taxes accruing after the death of the owner stand upon a different footing and are to be paid by the heir, legatee or devisee.

2. EXECUTORS AND ADMINISTRATORS—*Claims by, When Not Favored in Law.*—Allowances in favor of executors and administrators for personal expenses incurred in going to consult attorneys, and claims of like character, are not favored in law, and are to be subjected to the closest scrutiny.

3. EXECUTORS—*Duty in Will Contests.*—In a contest relating to the validity of a will, the person by it appointed executor is bound on every principle of honor, justice and right to defend it; to do otherwise would be a gross dereliction of duty. The employment of counsel is indispensable to the proper discharge of this duty, and their reasonable fees ought to be regarded as a proper charge against the property of the estate.

4. COSTS—*In Contesting a Will.*—The general rule that costs in chancery proceedings may be adjudged by the court according to the right and equity of the cause, is applicable to the contest of the validity of a will.

Memorandum.—Exceptions to an executor's report. In the Circuit Court of Piatt County, on appeal from the County Court; the Hon. FRANCIS M. WRIGHT, Judge, presiding. Exceptions overruled; error by plaintiffs. Heard in this court at the May term, 1894, and affirmed. Opinion filed October 29, 1894.

S. R. REED and BUCKINGHAM & SCHROLL, attorneys for plaintiffs in error.

WILLIAM G. CLOYD, attorney for defendant in error.

MR. JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

Exceptions exhibited against certain items in the annual report of the executor of the last will of Edward Swaney, deceased, came by appeal into the Circuit Court of Piatt County and were there overruled. This is a writ of error sued out to reverse the action of the court thereon. The first exception questioned the power of the executor to pay

taxes upon the real estate of the decedent. The taxes paid by the executor had been assessed upon property owned by the testator on the first day of May, 1890, and were due and payable at the date of his death, which occurred on the 12th day of January, 1891. Taxes so assessed and due, may, we think, be properly regarded as a debt against the deceased, and as such, paid by the executor or administrator. Schouler on Executors and Administrators, Sec. 428; 25 Amer. and Eng. Ency. of Law, page 282, and authorities cited in note 3. Taxes accruing after the death of the owner stand upon a different footing and are to be paid by the heir, legatee or devisee. In the case of Stark et al. v. Brown et al., 101 Ill. 400, cited in support of a contrary conclusion, the taxes paid by the administrator had been assessed upon the land after the death of the owner. In the case of Stone v. Wood, 16 Ill. 177, the question presented was, whether the judgment of the County Court allowing the claim of a creditor of the deceased was conclusive upon the heir when the administrator applied for a decree to sell the land of the deceased to pay such claim, and it was only in arguendo that the court said an administrator was not bound to protect the real estate nor authorized to pay taxes upon it. Phelps v. Funkhouser, 39 Ill. 401, involved the power of an administrator to bring suit to remove clouds or incumbrances from the lands of his intestate. The court declared that such power did not exist, and by way of argument said, "he (the administrator) has no power nor is he bound to protect the estate in any manner, not even to the extent of paying taxes assessed against it;" and cited Stone v. Wood, *supra*, in support of the position assumed. The precise question presented in the case at bar did not arise in either of the cases cited, and there was no occasion for the court to consider a distinction which we think is to be drawn between the liability of an estate for payment of taxes due at the time of the death of the testator and taxes accruing after his death. Sec. 232, Chap. 220, R. S., entitled Revenue, authorizes county authorities to institute and maintain an action of law against the owners of lands forfeited for non-payment of taxes, costs,

etc. This remedy is to be employed against the person who owned the land on the first day of May in any year for which the taxes were assessed. If the executor had not allowed and paid this claim for taxes a judgment under the provisions of this statute might, had the lands become forfeited, have been awarded against the estate upon the proper application of the county authorities. This being true, payment without litigation ought to be regarded as within the power of the executor and he entitled to credit therefor.

The second exception is directed against an allowance made in favor of the executor for his personal expenses incurred in going to Champaign to consult attorneys, whom he had employed to defend a claim filed in the County Court against the estate, and to defend a suit in the Circuit Court brought to contest the will of the testator. Allowances of this character to executors or administrators are not favored and are to be subjected to the closest scrutiny. They are easily subverted to improper ends or made the means of absorbing or wasting the effects of an estate. In the case at bar the total amount allowed is not large, and was only sufficient to reimburse the executor for sums actually expended, "for money out of pocket," as it is sometimes expressed. The order granting the allowance specially provided that the amount allowed " shall be subject to be taken into account hereafter by the County Court in its discretion in fixing the compensation of the executors. We do not think that the evidence sustains the charge made by the plaintiffs in error that the expenses were unnecessarily incurred, or that the executor acted in bad faith in defending the claim or the will, or was endeavoring to waste the estate, and upon the whole are inclined to agree with the conclusion of the Circuit Court that the executor ought to be reimbursed by the estate for the expenditures in question. But the chief contention arises under the third exception, which challenged the legality and propriety of the action of the court in allowing the executor the sum of $603, paid by him to the legal firm of Gore & Philbrick for services rendered by the firm in a suit in chancery brought to contest the validity of the will of the testator.

It is not urged that the amount paid is excessive or unreasonable, but the position of the plaintiffs in error is "that the contest of the will was a contest between the heirs of Dr. Swaney (the testator), complainant, and the relatives of his wife, beneficiaries under the will, defendants;" that the litigation was between beneficiaries, and that the executor had neither right nor power to involve the estate in a contest which properly belonged to the heirs, legatees, devisees and beneficiaries of the deceased. When the will was presented in the Probate Court, it was questioned whether a certain sheet of paper presented therewith, was a part thereof. This sheet made bequests to Norman H. Camp. The County Court held that it was not attested as required by law and rejected it from probate. The will, which consisted of an original will and a codicil thereto, was admitted to probate, and the defendant in error duly appointed executor according to its provisions. He accepted the trust reposed in him by the deceased, and took the oath of office as executor, as required by law, and undertook faithfully to discharge the duties of the trust. Subsequently the legal heirs of the deceased filed a bill in chancery to contest the validity of the will upon the grounds that the testator had not sufficient mental capacity to execute the instrument. The bill made the executors and legatees and beneficiaries under the will, as probated, defendants thereto, and made Norman H. Camp, the beneficiary under the provisions of the rejected sheet, also a defendant. We think the duty of the executor as to the course to be pursued with relation to this suit is well announced in Pingree v. Jones, 80 Ill. 177, where it was said: "In a contest relating to the validity of a will, as this was, the person by it appointed executor is bound on every principle of honor, justice and right, to defend it. He owes this at least to the memory of the dead, who placed this confidence in him. This will has been duly proved, without opposition and in the proper court, and the executor was bound to carry out the commands or resign. To do otherwise would be a gross dereliction of duty."

We are aware that many respectable authorities an-

nounce a contrary view, and are also advised that our own Supreme Court in Moyer v. Swygart, 125 Ill. 276, declared that the rule stated in Pingree v. Jones, *supra*, that a judgment for costs should not be rendered against an executor, though unsuccessful in defending an attack upon the will, had been modified in Shaw v. Moderwell, 104 Ill. 64. The conclusion that we reach from a consideration of all these cases is that while the rule announced in Pingree v. Jones, *supra*, that an executor can not be held liable individually for costs, is a general rule, it is not an inflexible one, but may in any particular case be departed from, if the peculiar circumstances of the case warrant such a course, as, if an executor act in bad faith, or is personally interested in the result of the contest and make the defense for his own protection or advantage, or other like reason. The general rule that costs in chancery proceedings may be adjudged by the court according to the right and equity of the cause is applicable to the contest of the validity of a will and its application may operate in particular cases to modify the rule laid down in Pingree v. Jones, *supra*. We are, however, disposed to accept the ruling of the court in that case, as to the duty of an executor to defend the validity of the will after its admission to probate, provided, of course, that he does so in good faith for the purposes of carrying out the wishes of the intestate, and is not moved thereto by any improper motives. It is not alone out of the respect to the memory of the dead, that courts should declare it to be his duty to defend the will, but the rule is one in which all living men are interested as a general principle and doctrine of the law.

The power to dispose of one's property by will, is an important and highly cherished right, and is so recognized throughout the enlightened world. The law should give every living man the assurance that his will, if so far executed in compliance with law as to be admitted to probate, shall be carried into effect, and if attacked, will be defended by the person to whom he has committed the duty and power of executing his last wishes and desires. The executor, in

the case at bar, defended the attack made upon the will as admitted to probate. He left to the beneficiary under the provisions of the sheet rejected from probate the burden of defending, as to his interest. The Circuit Court saw nothing to warrant the finding that the executor was prompted to defend from improper motives and in this we concur. The duty of the executor was imperative. The employment of counsel was indispensable to the proper discharge of that duty and the reasonable fees of such counsel ought to be regarded as a proper charge against the property of the estate. We concur in the judgment and order of the Circuit Court and the same is affirmed.