WILLIAM D. GODFREY, Exr. *et al.*

*v.*

REBECCA PHILLIPS *et al.*

*Opinion filed April 20, 1904—Rehearing denied June 8, 1904.*

1. APPEALS AND ERRORS—*when question of proper parties is not presented.* The question whether an alleged surviving husband of a deceased daughter of the testatrix should have been made a party to the proceeding to contest the will is not presented on appeal, where there is no proof to support the allegations of the answer that the daughter left a surviving husband.

2. SAME—*when omission of court to make up issue for jury in will case cannot be considered.* Failure of the court to formally make up an issue, to be submitted to the jury, whether the instrument was the last will of the testatrix, will not be considered on appeal, where such issue was the only one made by the pleadings and tried by the jury and no objection to the omission was made below.

3. EVIDENCE—*when alleged certificate of oath of subscribing witnesses is not admissible—amendment.* A record of the county court cannot be admitted in evidence in a will contest as a certificate of the oath of subscribing witnesses at the time of the first probate of the will, where it shows upon its face that the testimony was taken after the will was probated; nor can such record be amended by parol testimony of the county clerk.

4. WITNESSES—*when executor is not disqualified as a witness in proceeding to contest second will.* A person who is bound by a contract with the testator to execute a will without compensation does not,

by reason of his seeking to probate the will, disqualify himself as a witness for the contestants in a proceeding to contest a second will, even though the opposite parties are defending as executor and legatees under the second will.

5. EXECUTORS AND ADMINISTRATORS—*executor not liable for costs in county court on denial of probate.*  An executor is not personally liable for costs in the county court upon denial of probate of the will when he acted in good faith to carry out the will, and not from improper motives or a desire to advance his own interests.

6. WILLS—*when error in instruction will not reverse a decree against validity of will.*  Error in an instruction for the contestants upon the subject of undue influence will not reverse a decree against the validity of the will, where the jury, in addition to their general verdict, found specially that the testatrix was not of sound mind, which finding is sustained by the evidence in the record.

7. INSTRUCTIONS—*when erroneous instruction is not prejudicial.*  An instruction for the contestants authorizing the jury in a will case to consider evidence of the strength of mind and memory possessed by "and remaining to" the testatrix is not prejudicial, where every witness upon the subject testified that the memory of the testatrix was not as good when the will was made as it had been formerly.

APPEAL from the Circuit Court of Knox county; the Hon. GEORGE W. THOMPSON, Judge, presiding.

This is an appeal from a decree of the circuit court of Knox county setting aside an instrument dated September 20, 1900, and which purported to be the last will and testament of Elizabeth Housh, deceased, and which had been admitted to probate on September 23, 1901. Elizabeth Housh departed this life at the age of ninety-one years, on the 20th day of August, 1901, leaving six children and the descendants of four other children who had predeceased their mother.  For many years she resided with her husband on a farm in Knox county.  He died in 1879.  Two hundred and fifty acres of the farm were set off to her as dower and homestead, and she continued to reside there for a period of four years.  After that she moved to the village of Maquon, in that county, where she lived until July, 1900, when she was removed to the home of appellant Elizabeth Benfield, in Abingdon, in said county, where she remained until her death.

On December 1, 1899, she suffered a stroke of paralysis, from which she never recovered. She was practically confined to her bed or chair thereafter, although at times able to walk a few steps without assistance. What effect, if any, this paralytic stroke had upon her mental capacity is one of the contested questions in this case, contestants maintaining that in consequence thereof she became and continued mentally incapable of making a will down to the time of her death, while proponents affirm that she was always of sound mind and memory and showed no weakness of intellect except such forgetfulness as is incident to old age. During the latter part of her life in Maquon, her son Oliver, with his family, and after his death, his family, resided with and cared for her. She seems to have been induced by Elizabeth Benfield to leave Maquon and take up her residence at Abingdon. She died possessed of property worth approximately $9000, the accumulations of savings from the income of the land set off to her as dower and homestead, a part of which was invested in real estate. After her removal to Maquon, John Sloan had acted as agent for her up until the time of his death, and thereafter his son, Hugh Sloan, acted as her agent in renting the land and collecting the rents.

On August 22, 1893, she executed a last will and testament. At that time she had eight children living. By that will she gave to three of them $25 each, and to the remaining five and to two grandchildren the residue of her estate. By the will of September 20, 1900, she gave sums aggregating $1500 to various of her children and grandchildren and the residue of her estate to her daughter Elizabeth Benfield. Hugh Sloan was named as executor of the first will, and William D. Godfrey, the attorney who drew the second will, was named as executor thereof. At the time of the execution of the later instrument Elizabeth Housh gave to J. B. Scheitlin a power of attorney authorizing him to supersede Sloan in

the management of her business affairs. Scheitlin held this for a time, and without acting under it returned it either to Godfrey or Charles D. Benfield.

The bill herein charges that at the time of the execution of the second will Elizabeth Housh was not of sound mind and memory, and that she was led to execute the same by the undue influence of Elizabeth Benfield and the son of the latter, Charles D. Benfield.. The complainants in the bill were all the heirs-at-law of the deceased except the daughter Elizabeth. The defendants were William D. Godfrey, the executor, and Elizabeth Benfield. Both defendants answered, denying that any undue influence had been used, and averring that the deceased was of sound mind and memory when she executed the will. Upon a trial by a jury a verdict was rendered finding that the instrument dated September 20, 1900, was not the will of Elizabeth Housh, and also finding, in response to interrogatories submitted to the jury at the request of proponents, that at the time Elizabeth Housh executed this instrument she was not of sound mind and memory, and that the instrument of September 20, 1900, was the result of undue influence. A motion for a new trial was overruled, and the decree from which proponents appeal was entered.

After the death of Elizabeth Housh petitions to probate both of the wills in question were filed in the county court of Knox county. Hugh Sloan filed that by which it was sought to establish the will of 1893. The other will having been admitted to probate, his petition remains undisposed of and is still pending in that court. Pending the hearing upon the petition to probate the will of 1900, Hugh Sloan was appointed administrator to collect, and upon that will being admitted to probate William D. Godfrey qualified as executor, and Sloan turned over to him the assets in his hands and made a report to the county court, claiming $150 as commissions for services rendered as such administrator. To this

charge Elizabeth Benfield excepted, stating as grounds therefor that he was appointed such administrator, and accepted, under a contract to make no charge for his services. It does not appear from the record that this exception has ever been disposed of, and Sloan has never been formally discharged by the court. On the trial in the circuit court Sloan testified on behalf of the contestants. When he was offered proponents objected, stating as a reason therefor that the witness was incompetent. Thereupon, for the purpose of showing his competency, contestants offered in evidence the following contract:

"KNOX COUNTY, ILLINOIS, *April 5, 1889.*

"We, the undersigned, or either of us, agree to settle up the estate of Elizabeth Housh, if it is her will to have us do so, without commission, and to let her land, collect interest and rents for her during her lifetime.        JOHN SLOAN,
                                                        HUGH SLOAN."

Oral evidence was offered showing that this contract was executed in consideration of the payment of $600 by Elizabeth Housh to John Sloan, and that Oliver Housh, the son with whom Elizabeth Housh resided at Maquon, had possession of it in his lifetime, and at his death it came to the hands of his widow, who produced it in court on the trial of this cause. Thereupon the circuit court held Sloan a competent witness, and contestants were permitted to take his evidence.

W. H. BEAVER, FLETCHER CARNEY, and JAMES W. CARNEY, for appellants.

WILLIAMS, LAWRENCE & WELSH, A. K. HARDY, and J. L. WELLES, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

It is assigned as error that there is a lack of proper parties, for the reason that Mary Harshbarger, a daughter of Elizabeth Housh, died after her mother, and her husband is not a party. It is averred by the answers

that this woman left a surviving husband, but it does not so appear from the proof, consequently we cannot say that he survived.

It is urged that the court did not make up any issue at law to be submitted to the jury. Such an issue would have been, whether the instrument of September, 1900, was the last will and testament of Elizabeth Housh, and the objection is, that it was not formally, by decree, submitted to the determination of a jury. This is the precise question which was tried by the jury. It was the only issue presented by the bill and answer. No other issue could have been made up, and as appellants did not make this objection before entering upon the trial, when it could have been readily obviated, we will not consider it now.

Proponents offered what they term the certificate of the oath of the subscribing witnesses, taken for the purpose of proving the will. It appears that these witnesses testified in the county court in response to interrogatories. The will was admitted to probate on September 23, 1901. The certificate showed the offered testimony, which was fully written out, giving each question and answer, to have been sworn to on October 14, 1901, and was offered under the last clause of section 7 of chapter 148, Hurd's Revised Statutes of 1901, which provides: "And in all such trials by jury as aforesaid the certificate of the oath of the witnesses at the time of the first probate shall be admitted as evidence." Upon the face of the record the will could not have been admitted upon such testimony, because it appeared by the certificate that the oath was taken after the will was admitted, and it therefore did not appear that it was a "certificate of the oath of the witnesses at the time of the first probate." Proponents introduced the testimony of the county clerk for the purpose of explaining this discrepancy. It could not be so explained. The certificate could not be aided by oral evidence, and the court properly excluded it. No

certificate of the oath of the subscribing witnesses, which appeared to have been taken on or before September 23, 1901, was offered.

Appellants question the competency of Hugh Sloan on the ground that he was directly interested in the event of the suit, and that his testimony was in favor of himself and against the executor and legatee of a deceased person, wherefore he was within section 2 of chapter 51, Hurd's Revised Statutes of 1901. He was named as executor in the will of 1893. He was bound by the contract, which he had made upon a valuable consideration moving from the deceased, to execute that will without receiving any commission therefor, and he personally filed a petition asking that it be admitted to probate. Section 2 of chapter 3, Hurd's Revised Statutes of 1901, required him to cause the will to be proved and recorded or to present the will and declare his refusal to accept the executorship. He could not refuse without violating his contract and becoming liable to the estate for his failure to execute the will without compensation. If the first instrument was admitted to probate, he would be required, without remuneration, to perform services for which the reasonable compensation would be several hundred dollars, while if the instrument of September, 1900, was found in this proceeding to be the will of the deceased he would be relieved from this obligation, because he was required to render such services only if directed so to do by the will of the deceased. It is true that as administrator to collect he claimed commissions, to which appellant Elizabeth Benfield objected; but the services there rendered were not rendered in accordance with the will of Elizabeth Housh, and it was only services rendered in settling her estate in accordance with her will that he was required by the contract to perform without reward. So far as his financial interests were concerned, they would be promoted by the establishment of the instrument of later date, unless, indeed, he incur-

red a liability for costs in filing the petition in the county court, which would change the situation. Our statute on administration is silent in reference to the payment of costs when an unsuccessful attempt is made to probate a will. The law required Sloan to prove the instrument of 1893 unless he declined the trust conferred upon him by that document, and this he could not do without a violation of his contract. Following the reasoning of this court in *Pingree* v. *Jones*, 80 Ill. 177, *Shaw* v. *Moderwell*, 104 id. 64, *Moyer* v. *Swygart*, 125 id. 262, *Hesterberg* v. *Clark*, 166 id. 241, and the reasoning of Mr. Justice BOGGS in *Shaw* v. *Camp*, 56 Ill. App. 23, we are of opinion that where an executor, in good faith and with a desire to carry out the will of the deceased, and not for the purpose of advancing his own interest, or from other improper motives, attempts to prove a will, he will not be liable for costs in the probate court if he fail. If, however, he should appeal from the order of the county court refusing probate, thereby taking upon himself a burden which the law does not place upon him, a different question would be presented. Nothing appears here to indicate that Sloan was actuated by any selfish or improper motive in filing the petition to probate the first will. If Sloan were entitled to commissions under the first instrument, manifestly he would be incompetent; or if he were by it required to serve as executor without commissions, and had the right to elect whether he would serve as executor or not, and sought to prove the first will, we are disposed to the view that his interest in securing the admission of that will to probate would disqualify him, because he, in his individual right, without being under obligation so to do, petitions for the probate and becomes an active party in the litigation; but where, as here, he is bound by a contract to execute the will without compensation, and, being so bound, he seeks its probate, as he is required to do if he is to carry out his contract, he is not thereby disqualified to testify on the part of the

contestants in a proceeding to set aside a second will. Sloan, in this case, testified against his own financial interests, and was consequently competent, notwithstanding the fact that the parties against whom he testified defended as executor and legatee of a deceased person. *Keithley* v. *Stafford*, 126 Ill. 507.

We have carefully considered the other objections made to the action of the court in passing upon the testimony, and are of the opinion that no error was committed. In other instances the matters under consideration were unimportant.

At the close of all the testimony the proponents moved the court to instruct the jury that there was no evidence of undue influence, and that in reaching a verdict they should disregard that question. The evidence offered on behalf of contestants on this phase of the case was almost wholly circumstantial. It was not strong, but we think, standing alone, would warrant a verdict against proponents. The motion was therefore properly overruled. For reasons hereafter given, however, the decree cannot be sustained upon the ground of undue influence.

It is then urged that the verdict was against the manifest weight of the evidence. So far as the question of undue influence is concerned, we are disposed to think the testimony preponderated in favor of the proponents, —whether so manifestly as to require a reversal of this decree, if it was supported on no other ground, it is unnecessary to determine. On the question of testamentary capacity twenty witnesses testified on the part of the proponents and twenty-five on behalf of the contestants. We have carefully examined this testimony as it is set out in the abstract. It is very conflicting. Its length forbids a discussion thereof in detail in this opinion, and we must perforce content ourselves with the statement that in our judgment it preponderates in favor of the contestants, and shows that at all times after she received the stroke of paralysis Elizabeth Housh was not

of sound mind and memory. After she moved to Abingdon she was unable to give the names of her children and their husbands and wives. She does not seem to have realized the extent of her property. She had an income of $800 per year from the land set off to her, less the expenses of its management and the taxes, and had, in addition, approximately $7000 loaned and drawing interest. Her income was much beyond her simple wants, but she had an apparent inability to understand this fact, and was in fear, which was without reasonable foundation, that her property would all be consumed and she would become penniless. No circumstances appear at any time after she left Maquon which indicate any business or testamentary capacity. After she received the paralytic stroke she was unable to transact her business and make settlements with her agent. She does not seem to have engaged in a single transaction of any kind which would show mental capacity to understand business affairs of the simplest character at any time after December 1, 1899, unless it be the execution of the will and power of attorney, and it appears from the evidence of Sloan that shortly after these documents had been signed he called on her to learn whether she had executed the power of attorney. She at first denied it and expressed a desire that he continue as her agent. Upon being reminded by her daughter that she had given such a power to Mr. Scheitlin, she said: "Some men called here one day and I signed some papers, and I don't remember what they were." It does not appear that she took any further steps to revoke Sloan's agency, and no attempt was made at any time to act under the Scheitlin power of attorney, except that on one occasion Charles D. Benfield took it to Sloan's residence and exhibited it to him.

The sixth instruction given on the part of the contestants is plainly erroneous. It deals solely with the question of undue influence. It is argumentative. It sub-

mits to the jury the question whether Elizabeth Benfield, and one or more persons acting in her interest, practically excluded the deceased from "free and unrestrained association and converse with old and dear friends and neighbors." There is nothing in the evidence to support the instruction in this regard. If the verdict rested alone upon the ground of undue influence this instruction would necessitate a reversal; but the jury, in addition to their general verdict, specifically found that Elizabeth Housh was not of sound mind and memory when she executed the writing of September, 1900. That specific finding supports the general finding that the instrument in question is not the last will and testament of Elizabeth Housh, and the finding on the question of undue influence, and the improper instruction, which perhaps contributed to that finding, may therefore be disregarded without affecting the result.

The only other exceptions taken to the action of the court in passing upon instructions, which seem worthy of serious consideration, question the twenty-second and twenty-fifth instructions given for the contestants. The twenty-second authorizes the jury to consider the evidence tending to show "the strength of mind and memory possessed by and remaining to Elizabeth Housh." This instruction would have been more accurate had the words "and remaining to" been omitted. The twenty-fifth instruction contained the same expression and is the subject of the same objection; but as it appeared from the evidence of every witness who testified on the subject that her memory was not as good at the time the will was executed as it had been in earlier years, we do not think proponents were injured by this error.

The decree of the circuit court will be affirmed.

*Decree affirmed.*