ANN M. JONES *et al.* Appellees, *vs.* ELIZABETH ABBOTT *et al.* Appellants.

*Opinion filed June 18, 1908.*

1. EVIDENCE—*test of interest which disqualifies witness when an heir is a party.* Under section 2 of the Evidence act the test of interest that disqualifies when an heir is a party to a suit is whether the witness will immediately gain or lose by the event of the suit, or whether the verdict can be given in evidence, either for or against him, in another suit.

2. SAME—*when complainant sues as an heir.* A child who seeks to set aside a will of her father and to have a partition of the land under a contract whereby the father had agreed to allow his property to descend to his heirs under the statute sues as an heir of her deceased father, as none but such heirs would be entitled to proceed under the contract.

3. SAME—*who are incompetent witnesses when the complainant sues as an heir.* Where the complainant in a bill to set aside a will and for partition sues as an heir, defendants whose interests will be advanced by sustaining the will, including the principal beneficiary of the will, the executor who will receive commissions from a sale of the land under the will, and the wife of the executor, are incompetent to testify in their own behalf to matters occurring during the lifetime of the ancestor.

4. SAME—*when instrument is prima facie evidence that its contents were known to maker.* Where the signature to a written instrument is proved to be genuine the instrument affords *prima facie* evidence that its contents were known to the subscriber and that it was his act, and the burden of overcoming such *prima facie* showing is upon those who assert the contrary.

APPEAL from the Circuit Court of DeWitt county; the Hon. W. G. COCHRAN, Judge, presiding.

This is an appeal from a decree of the circuit court of DeWitt county ordering that the probated will of Daniel H. Hampleman, the ancestor of the parties claiming the real estate involved, be set aside as a cloud on the title of certain of said parties, and finding title in the legal heirs of said Hampleman, appointing commissioners and decreeing partition of the premises and a distribution of certain personal property.

The matter has been in this court before, (*Jones* v. *Abbott,* 228 Ill. 34,) and the facts leading up to the suit need not be re-stated. That appeal was taken from an order of the circuit court sustaining a general demurrer to the bill for partition and dismissing the bill for want of equity. In that case this court found that a certain contract made by Hampleman, in which he agreed to permit his property to descend according to the Statute of Descent, was sufficient, as a matter of law, on the record as it then stood, to render void a will which said Hampleman made after entering into said agreement, in which will he disposed of his property in a different manner than that pointed out by the laws of descent. This court in that appeal reversed the decree and remanded the case for further proceedings consistent with the views there expressed. The trial court thereupon referred the case to the master, and upon the filing of his report entered a decree removing the cloud and ordering partition, as above stated. Appellants here are Elizabeth Abbott, one of the daughters, who under the will was given substantially one-half of the property after the payment of the debts and certain specific legacies, and who, under the decree herein complained of, is given substantially one-fourth of the property; Albert L. Hampleman, son of a deceased child of said Daniel, who under the will was to receive substantially one-eighth of the balance

remaining after paying the debts and specific legacies and under the decree is to receive substantially one-sixteenth of the property; and John Dagley, the executor named in the will which was set aside. The appellee Ann M. Jones is a daughter of said Daniel, and under the decree in question is awarded substantially an undivided one-fourth of the property while under the will she was to receive but $500.

INGHAM & INGHAM, for appellants.

ED. PEIRCE, LEMON & LEMON, E. B. MITCHELL, HERRICK & HERRICK, and L. E. STONE, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

The main contention of law raised by appellants is that certain witnesses were held incompetent whose testimony should have been considered. Under section 2 of chapter 51 (Hurd's Stat. 1905, p. 1034,) the test of interest that disqualifies when an heir is a party to the suit is whether the witness would immediately gain or lose by the event of the suit, or whether the verdict could be given in evidence, either for or against him, in another suit. (*Feitl v. Chicago City Railway Co.* 211 Ill. 279.) Appellants contend in their brief that appellee Ann M. Jones is not in this contest suing or defending as an heir of her father; that she is suing under a contract, and to get her property away from under the control of her father's will she is compelled to set up and prove her contractual relations with him; that a stranger to the blood could proceed in exactly the same manner. We cannot agree with this contention. Counsel have cited no authorities, and we have been unable to find any, that tend to uphold their position. The clause in question in the instrument reads as follows: "I do hereby, in further consideration of the re-conveyance of the property by my said trustees to me, hereby agree and bind myself, my heirs, and executors, administrators and

assigns, that my said property shall descend to and become the property of my heirs named as beneficiaries in my will heretofore made or that said property shall descend to my said heirs as per the statute of the State of Illinois in such case made and provided." The will mentioned in this contract was destroyed when the will which it is now sought to have set aside was made. It is manifest that appellee Ann M. Jones, if she recovers under this contract, is recovering as an heir of her deceased father. A stranger to the blood would have no right to proceed under it, and only the heirs are given any rights thereby. Courts of equity disregard mere forms and look to the substance to ascertain the real interest of parties in controversies of this kind. (*Bardell* v. *Brady,* 172 Ill. 420.) Mrs. Abbott, a daughter of the deceased, was incompetent to testify to anything occurring during the lifetime of her father because she was a party to the suit and directly interested and the adverse party is suing as heir of the deceased person. (*Waugh* v. *Moan,* 200 Ill. 298; *Bevelot* v. *Lestrade,* 153 id. 625.) John Dagley, another witness offered by the appellants, was named as executor by the will sought to be set aside, and he, also, was incompetent to testify to anything occurring during the life of Daniel H. Hampleman, for the reason that if the will was not set aside the land in controversy would be sold by him, as executor, and he would receive commissions therefor. (*Godfrey* v. *Phillips,* 209 Ill. 584; *Bardell* v. *Brady, supra.*) As he was incompetent his wife was also incompetent to testify to anything that took place during Hampleman's lifetime. *Smith* v. *Smith,* 168 Ill. 488; *Shovers* v. *Warrick,* 152 id. 355.

John Fuller, attorney for some of appellants, withdrew from the case as an attorney after the decree below had been reversed and the cause remanded in this court. On the hearing in the lower court thereafter he testified at length in regard to the drafting and signing of the receipt in question. The appellee objected to his testimony on the

ground that it was shown that he was to have a larger fee if appellants were successful than he would otherwise have, and that he had not been settled with, at the time of his testimony, for what he had already done in the case. As no cross-errors were assigned questioning the correctness of this ruling the competency of his testimony is not presented for our consideration. (*Provart* v. *Harris,* 150 Ill. 40; *Stowell* v. *Spencer,* 190 id. 453; *Village of Shumway* v. *Leturno,* 225 id. 601; *Expanded Metal Fireproofing Co.* v. *Boyce,* 233 id. 284.) It is also contended that he remained in the case after he knew he was to be a witness, and that this should affect the weight of his testimony. (*Onstott* v. *Edel,* 232 Ill. 201; *Bishop* v. *Hilliard,* 227 id. 382.) We cannot say from this record that he did not withdraw from the case as soon as it appeared evident that his testimony would be material.

It is strongly urged by appellants that the receipt or agreement in question was signed by Hampleman without knowledge on his part that it contained the clause as to the distribution of his property after his death, and because it was represented to him that the instrument was merely a receipt for the property turned back to him by the trustees. The genuineness of the signature to the receipt was fully established. The instrument affords, therefore, *prima facie* evidence that its contents were known to the subscriber and that it was his act. The burden rests upon appellants to overcome this *prima facie* showing. *Sheer* v. *Sheer,* 159 Ill. 591; *Hartford Life Ins. Co.* v. *Gray,* 80 id. 28; *Todd* v. *Todd,* 221 id. 410; *Compher* v. *Browning,* 219 id. 429.

The proof in the record touching the question as to whether deceased understood the contents of this document, so far as the competent evidence extended, is substantially as follows: Charles M. Peirce, who acted as attorney for appellee Mrs. Jones, testified that the instrument was prepared at his office at Bloomington and that he and F. M. Jones, husband of appellee, took it to Clinton, where they

met Daniel Hampleman and his attorney, John Fuller, and all went over the contract together; that the witness and Mr. Fuller interlined it and Mr. Fuller gave the draft so interlined to his stenographer, Miss Myrtle Kirk, (now Mrs. Campbell,) who re-wrote it, including the changes, and that Mr. Fuller then took it to Hampleman, and the latter, after hearing it read over, signed it in a room in the DeWitt county court house. He testified that he, F. M. Jones and Fuller were present when Hampleman signed the instrument. He thought they gave the draft to Miss Kirk in the court house and that she took it to her office to write up, but could not remember definitely as to that point. Jones' testimony substantially to the same effect on these matters was offered but the court rightly held it incompetent, as his wife was a party to the suit.

Mrs. Campbell testified that she had been employed for some ten years by one of the counsel in this case and had also done work during that time for other attorneys, including some for Mr. Peirce in reference to the Hampleman matter, but that she could not remember that she had ever done any work for Mr. Fuller in that matter. She testified at first that the agreement looked somewhat like her style of typewriting, although she could not remember writing it, but after careful examination of the various imperfections and peculiarities of the different letters when compared with pieces of typewritten work she knew to be hers, she was positive it was not done on the machine in her employer's office, and said she believed that she did not typewrite it, but could not say for sure. A typewriter expert from Chicago, who was in charge of the repair department of one of the large companies, also testified that the writing in question could not have been made on the same machine as the other typewritten work which Mrs. Campbell knew positively to be hers.

John Fuller testified that he had been Hampleman's attorney since about 1900; that the first time he saw the in-

235—15

strument in question was March 21, 1900, and it was in the possession of Mr. Jones or his attorney, Mr. Peirce, and that Mr. Jones said he was going to take it out to the farm to get Mr. Hampleman's signature, and the witness gave him a letter to deliver to Mr. Hampleman reading as follows: "I have looked over the typewritten receipt that Mr. Jones has prepared and I can see no objections to you signing it, except the last part of it in reference to your will and property. That is a question that you must decide for yourself fully. Otherwise I can see no objection to it." Fuller denied that he went over the instrument in question with Peirce and Jones and that they made interlineations in it, and gave it, so interlined, to Miss Kirk to be copied. He testified that he did not see Mr. Hampleman sign the instrument, nor did he meet him in the court house in the presence of the others, as testified by Mr. Peirce.

We find no direct or positive evidence in the record to indicate that the deceased did not have full understanding of the receipt in question before signing. Peirce's testimony and Fuller's are in direct conflict. There was an attempt, as we have seen, to contradict Peirce by the evidence of the shorthand reporter as to her writing the receipt. While some of the witnesses must have either forgotten or mis-stated the facts with reference to some of these matters, we cannot say, from all the evidence in the record on this question, that it raises even a doubt that the deceased understood the contents of the receipt at the time he signed it. If Fuller's testimony be correct, it only tends to prove that Peirce is mistaken as to the circumstances under which the instrument was signed, and does not prove that the deceased, Hampleman, did not, when he signed the instrument in question, fully understand it.

We see no reason, on the record before us, to disturb the findings of the chancellor who heard the case. The decree of the circuit court will accordingly be affirmed.

*Decree affirmed.*